UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LYMAN DAWSON, )
)
Petitioner, )
)
v. )     No. 1:17-cv-04490-WTL-DML
)
DUSHAN ZATECHY, )
)
Respondent. )

**Order Denying Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

The petition of Lyman Dawson for a writ of habeas corpus challenges a prison disciplinary

proceeding identified as No. ISR 16-06-0032. For the reasons explained in this Order, Mr.

Dawson's habeas petition must be **denied**.

**A.     Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss*,

381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v.*

*Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process

requirement is satisfied with the issuance of advance written notice of the charges, a limited

opportunity to present evidence to an impartial decision-maker, a written statement articulating the

reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record"

to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985);

*Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.

2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

**B.     The Disciplinary Proceeding**

On June 7, 2016, Investigator D. Wilson wrote a Conduct Report charging Mr. Dawson

with B-209, impairment of surveillance.  Dkt. No. 8-9. The Conduct Report states:

> On 06/07/2016, at approximately 12:55 PM, I, Investigator D. Wilson, was
> reviewing video footage observed Offender Wesley Willis #207998 give Offender
> Lyman Dawson #150147 (range detail) something through the cuff port. Offender
> Lyman then took this and put it over the camera on the 6B range blocking the
> surveillance.
>
> Maintenance workers went over to HCH [to] clean the camera and notified me that
> the camera was destroyed beyond repair.

Dkt. No. 8-9.

Mr. Dawson was notified of the charge on June 10, 2016, when he received the Screening

Report.  Dkt. No. 8-17.  He pleaded not guilty to the charge, requested a lay advocate, and did not

wish to call any witnesses.  *Id.*  He requested to review the video evidence – "I want the actual

physical camera to be viewed, I did not destroy it."  *Id.*  The disciplinary hearing board determined

that allowing the offender to view the video recorded evidence would jeopardize the safety and

security of the facility, so a summary of the video recording was prepared.  Dkt. No. 8-19.  The

video summary stated, "the video was reviewed.  The video showed that the conduct report was

accurate.  Offender is guilty in destruction of camera surveillance."  *Id.* (capitalization modified).

The Court reviewed the video, which was submitted *ex parte*.  The video shows Mr. Dawson

peering suspiciously up at the camera, going to an offender's cell and retrieving an unknown

object, returning to the camera, and defacing and damaging the camera cover.  Dkt. No. 12 (*ex

parte*).

The prison disciplinary hearing was held on June 15, 2016.  According to the notes from

the hearing, Mr. Dawson stated: "[t]he other offender got wrapped up in this. He had no part of

this incident." Dkt. No. 8-16.  Based on the staff reports, Mr. Dawson's statement, evidence from

witnesses, and the physical evidence of the video and conduct report, the hearing officer found Mr. Dawson guilty of B-209, impairment of surveillance. The sanctions imposed included ninety days of earned-credit-time deprivation (suspended) and a credit class demotion. Mr. Dawson appealed to the Facility Head on June 21, 2016. Dkt. No. 8-15. On July 18, 2016, Mr. Dawson's appeal was granted and he was granted a rehearing on the grounds that he was not provided with physical evidence or an explanation for the denial at his hearing. Dkt. No. 8-14.

Mr. Dawson was re-notified of the charge on August 10, 2016, when he received the Screening Report again. Dkt. No. 8-8; Dkt. No. 13 at 5. He pleaded not guilty to the charge, requested a lay advocate, and did not wish to call any witnesses. Dkt. No. 8-8; Dkt. No. 13 at 5. He requested the destroyed camera as physical evidence because "it was not replaced." A note was later added: "[e]vidence denied due to safety/security. Photo provided in lieu of physical camera. Statement from Camera maintenance staff included." Dkt. No. 8-8.

The prison disciplinary rehearing was held on August 18, 2016. Dkt. No. 8-7. According to the notes from the hearing, Mr. Dawson stated: "I don't know nothing I guess. I watched the maintenance guy repair the camera. He just replaced the cover not the whole camera." Dkt. No. 8-7. At the hearing, the evidence considered included staff reports, Mr. Dawson's statement, evidence from witnesses, the statement from Callahan (presumably a member of the maintenance staff) (Dkt. No. 8-11), a memo from Utility Captain Conyers (Dkt. No. 8-10), and a photo of the damaged camera (Dkt. No. 8-12). In an email dated June 8, 2016, the facility's utility captain, Michael Conyers, sent an email that noted that one of the newly installed cameras in the H & J Cell House had been destroyed. Dkt. No. 8-10. Additionally, William Callahan sent a message on August 11, 2016, which noted that there were no available replacement parts for the cameras, and that the damage to the cover of the camera was not covered under the manufacturer's warranty.

Dkt. No. 8-11.  Callahan stated, "[p]hysical damage to any part of a camera results in having to replace the camera."  *Id.*  Based on the evidence, the hearing officer found Mr. Dawson guilty of B-209/240, impairment of surveillance.  The sanctions imposed included ninety days of earned-credit-time deprivation and a credit class demotion.

Mr. Dawson appealed to the Facility Head and the IDOC Final Reviewing Authority, both of which were denied.  He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## C.    Analysis

Mr. Dawson presents four grounds on which he challenges his prison disciplinary conviction, but each of his grounds includes a few sub-parts.  The grounds are best summarized as: (1) an expungement, not a rehearing, was the appropriate remedy for his first appeal; (2) failure to identify the maintenance worker who notified Investigator Wilson that the camera was damaged to allow him to get a statement from the maintenance worker; (3) denial of his request to call maintenance worker as a witness; (4) failure to show him evidence of the physical camera to show it was not destroyed; (5) failure to show him video tapes (raised in reply); (6) insufficient evidence to convict him; (7) "credit time" was taken without a proper hearing; (8) the hearing report did not provide information on what information was relied on and why; and (9) failure to have a hearing to address the value of the property for the restitution order.  The respondent responds that some evidence supports his conviction and no due process right was violated.  Moreover, the respondent asserts that Mr. Dawson fails to show that any of the alleged denied evidence would have been exculpatory.

### 1.     Ground One: Appropriate remedy for first appeal

Mr. Dawson first asserts that the appropriate remedy from the first appeal was an expungement of the record and not a rehearing, because "I had already served the majority, if not all, of my sentence."

There is no due process right entitling Mr. Dawson to an expungement of his record and prohibiting a rehearing. *See Wolff*, 418 U.S. at 563–71 (holding that a prisoner who is subject to a prison disciplinary proceeding that results in the loss of a liberty interest such as good-time credit is entitled to four procedural safeguards under the Due Process Clause: (1) written notice of the charges at least 24 hours before the hearing; (2) a hearing before an impartial decisionmaker; (3) a qualified opportunity to present evidence; and (4) a written statement by the decisionmaker); *Hill*, 472 U.S. at 454-57 (holding that due process also requires that a guilty finding be supported by "some evidence"). The Supreme Court has cautioned lower courts "not to add to the procedures required by *Wolff*, which…represents a balance of interests that should not be further adjusted in favor of prisoners." *See Baxter v. Palmigiano*, 425 U.S. 308, 314–24 (1976); *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

Thus, because there is no constitutional violation, Mr. Dawson is not entitled to habeas relief on the ground that he should not have received a rehearing. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of the U.S. Constitution or other federal laws).

### 2.     Ground Six: Sufficiency of the Evidence

Mr. Dawson asserts that the evidence failed to show the camera was "destroyed beyond repair," and therefore there was insufficient evidence to support his conviction.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

The Adult Disciplinary Code Section B-209 is entitled "Impairment of Surveillance," and is defined as:

> Using curtains, coverings or any other matter or object in an unauthorized manner that obstructs or otherwise impairs the line of vision into an offender's cell or room or which obstructs or otherwise impairs any viewing panel or surveillance equipment, either audio or visual within the facility, including blocking staff's view down a range."

Indiana Department of Correction Adult Disciplinary Process, Appendix I: Offenses, available at http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

Here, as documented on the Conduct Report, Investigator D. Wilson saw Mr. Dawson block the surveillance on a camera. Dkt. No. 8-9. Maintenance workers later went to clean the camera and informed the investigator that the camera was destroyed beyond repair. Dkt. No. 8-9. Other evidence supported the Conduct Report, including an email from the utility captain stating that one of the new cameras was destroyed (Dkt. No. 8-10), an email stating that damage to any part of a camera, such as the dome, results in having to replace the entire camera (Dkt. No. 8-11),

a photo of the damaged camera (Dkt. No. 8-12), and video footage clearly showing Mr. Dawson defacing and damaging the camera (Dkt. No. 12). A copy of the photo of the damaged camera is reproduced here:



It is irrelevant whether the camera was "damaged beyond repair," instead of simply damaged or defaced. All of the above evidence is "some evidence," under *Ellison*, that the camera's view was obstructed and that Mr. Dawson violated B-209, impairment of surveillance. Thus, Mr. Dawson's challenge to the sufficiency of the evidence must be rejected.

        3.       <u>Grounds Four and Five: Failure to Show Camera and Video Tapes</u>

Mr. Dawson further asserts that he was denied evidence when he was not permitted to view the physical camera itself (and not a photograph) and was not permitted to review the video tapes.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence

relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). However, prison officials are not "required to allow the presentation of evidence that could threaten institutional safety or correctional goals." *Scruggs v. Jordan*, 485 F.3d 934, 940 (7th Cir. 2007); *see also Donelson v. Pfister*, 811 F.3d 911, 918 (7th Cir. 2016) (holding that "[p]rison authorities are not compelled to accept requests [for evidence] that threaten institutional goals" (citation and quotation marks omitted)). "[P]rison authorities who assert a security justification for nondisclosure [of video evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, 681 Fed. Appx. 494, 496 (7th Cir. 2017) (quoting *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) ("*Piggie I*")).

This burden was not met here. Notably, similar to as happened here, "adding a checkmark to preprinted boilerplate saying that disclosing evidence '. . . would . . . jeopardize the safety and/or security of the facility' is inadequate to override the right to disclosure under the Due Process Clause." *Id.* at 497 (collecting cases). In order for the withholding of the camera or video to be justified, a more thorough explanation is required. *See id.* ("[C]hecking a box does not explain how th[e] standard is met.").

However, Mr. Dawson has failed to show that review of the actual camera or of the video tapes would have been exculpatory or material. Mr. Dawson was convicted of B-209, "impairment of surveillance," which only requires a showing that "[u]sing … any other matter or object in an unauthorized manner that … obstructs or otherwise impairs any viewing panel or surveillance equipment." Whether the camera was fully destroyed or not is not exculpatory of whether Mr.

Dawson defaced the camera such that surveillance was impaired. The Court reviewed the video and the photo of the damaged camera. The video shows Mr. Dawson peering suspiciously up at the camera, going to an offender's cell and retrieving an unknown object, returning to the camera, and defacing and damaging the camera cover. Thus, the desired evidence, a review of the video tape and a physical inspection of the camera itself, would not have been exculpatory or material to Mr. Dawson's conviction for impairing the surveillance equipment by obstructing the camera's view by defacement.

Because harmless error analysis applies to due process violations in prison disciplinary proceedings, *see Jones*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie*, 344 F.3d at 678, habeas relief is also not available to Mr. Dawson on this ground.

4.    <u>Grounds Two and Three: Failure to Include Statement of and Denial of Request for Maintenance Worker</u>

Mr. Dawson next asserts that he was denied his request to call the maintenance worker as a witness, that the screening officer refused to identify the maintenance worker to allow him to submit questions to support his defense, and that the maintenance worker allegedly submitted a statement, but he never got to see that statement.

An inmate "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

As an initial matter, on the screening form, Mr. Dawson did not request any witnesses for either his hearing or rehearing. His failure to do so served as a waiver of the right to have that evidence at the hearing. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)

("McPherson was provided with all the procedural protections required by due process . . . . McPherson cannot now demand a new hearing based upon evidence that was available to him at that prior hearing.").

However, Mr. Dawson asserts that he requested the witness at screening and the screening officer denied his request. Mr. Dawson contends that the maintenance officer would have stated that the camera was not damaged. However, the evidence submitted includes an email from the utility captain stating that one of the new cameras was destroyed (Dkt. No. 8-10), an email stating that damage to any part of a camera, such as the dome, results in having to replace the entire camera (Dkt. No. 8-11), a photo of the damaged camera (Dkt. No. 8-12) and video footage clearly showing Mr. Dawson defacing and damaging the camera (Dkt. No. 12). Mr. Dawson fails to show how calling the maintenance officer would provide testimony that is not "irrelevant, repetitive, or unnecessary," *Pannell*, 306 F.3d at 503, since it is irrelevant whether the camera was completely destroyed.

Additionally, Mr. Dawson states that he never received a statement from the maintenance worker despite promises otherwise. Mr. Dawson's second screening report states "[s]tatement from Camera maintenance staff included." Dkt. No. 8-8. Although it is unclear which statement this refers to, two emails from maintenance staff were considered at the hearing. Mr. Dawson does not appear to assert that he did not receive those emails. Nor has Mr. Dawson explained how any statement from the maintenance worker would be material or exculpatory. *See Jones*, 637 F.3d at 847.

Thus, Mr. Dawson is not entitled to habeas relief on these grounds related to the maintenance worker.

5. <u>Grounds Seven and Nine: "Credit Time" Taken and Restitution Ordered Without a Proper Hearing</u>

Mr. Dawson alleges that "credit time" was taken without a proper hearing, but he merely states that he was placed in segregation without a proper hearing. He further alleges that there was no proof to support the value in his restitution order and he should have received a hearing to address the value of the property.

For purposes of seeking habeas relief, in order to be considered "in custody," the petitioner must have been deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001). Therefore, sanctions such as restitution do not result in the petitioner being "in custody" as a result of that proceeding. *See Smith v. Neal*, 660 Fed. Appx. 473, 475 (7th Cir. 2016). The same is true for placement in disciplinary segregation. *See Holleman v. Finnan*, 259 Fed. Appx. 878, 879 (7th Cir. 2008); *Montgomery*, 262 F.3d at 643-44.

Because Mr. Dawson apparently was only placed in segregation without a proper hearing and was ordered to pay restitution without a hearing on the value of the property, the due process rights of a disciplinary proceeding do not attach. In such circumstances, the prison disciplinary officials are "free to use any procedures it chooses, or no procedures at all." *Montgomery*, 262 F.3d at 644. Accordingly, habeas relief is not also not available to Mr. Dawson on these grounds.

6. <u>Ground Eight: Sufficiency of the Grounds of the Hearing Report</u>

Finally, Mr. Dawson asserts that "[o]n the hearing report significant information as to what information they relied on and why was not given." Dkt. No. 2 at 6.

"Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Forbes v. Trigg*, 976

F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* But "[o]rdinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987). The purpose of this requirement is to allow "a reviewing court . . . [to] determine whether the evidence before the committee was adequate to support its findings concerning the nature and gravity of the prisoner's misconduct." *Id.*

The written statement of decision by the hearing officer states that the reason for his decision is "[p]reponderance of evidence" based on the staff reports, Mr. Dawson's statement, witness evidence, statement from Callahan, memo from Capt. Conyers, and a photograph of the camera. Dkt. No. 8-7. Mr. Dawson is simply incorrect that the written statement does not reflect what information the hearing officer considered and relied on.

But more to the point, although the written statement of decision was brief, it was sufficient to comport with due process. When a case is "particularly straightforward," the hearing officer need "only to set forth the evidentiary basis and reasoning for the decision." *Jemison v. Knight*, 244 Fed. Appx. 39, 42 (7th Cir. 2007); *see Scruggs*, 485 F.3d at 941; *Saenz*, 811 F.2d at 1174. Here, because the underlying case is fairly straightforward, the hearing officer's simple statement regarding the evidence on which he relied in making his decision is sufficient. *See Jemison*, 244 Fed. Appx. at 42 (holding that the hearing officer's statement "that it relied on staff reports and [the inmate's] own statement at the hearing" was sufficient because the hearing officer "had only to weigh [the officer's] statement against [the inmate's]"); *see also Saenz*, 811 F.2d at 1174; *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987). Accordingly, an adequate written statement was provided, and Mr. Dawson is not entitled to habeas relief on this claim.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Dawson to the relief he seeks. Accordingly, Mr. Dawson's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date: 3/27/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

LYMAN DAWSON
150147
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Larry D. Allen
INDIANA ATTORNEY GENERAL
larry.allen@atg.in.gov